Anthony A. DeLuca, Providence, R.I., for debtor/defendant.

Geoffrey A. Regan, McGovern & Noel, Ltd., Providence, R.I., for plaintiff.

### In re NORWOOD CHEVROLET CO., Debtor.

### WJAR–TV OUTLET BROADCASTING, INC., Plaintiff,

v.

### NORWOOD CHEVROLET CO., Defendant.

**Bankruptcy No. 90–12158.**
**Adv. No. 91–1165.**

United States Bankruptcy Court, D. Rhode Island.

Aug. 14, 1992.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

In this adversary proceeding we are called upon to determine the legal ownership of a 1990 Chevette Astro Passenger Van. The vehicle has been customized for the special use to which it was put by the television broadcasting station, WJAR Channel 10. WJAR–TV/Outlet Communications, Inc. ("Outlet"), the owner of WJAR Channel 10 and Plaintiff herein, seeks an order requiring the Defendant/Debtor Norwood Chevrolet Co. ("Norwood") to turnover the title certificate to the subject van. Norwood refuses.

The undisputed facts are as follows: on February 14 and March 28, 1990, respectively, Norwood and Outlet entered into a "Reciprocal Agreement Contract", and a "Motor Vehicle Leasing Agreement" wherein Outlet would provide $30,320.00 worth of broadcast advertising time to Norwood,[1] in exchange for a one year lease of the van, after which Outlet could purchase the vehicle for $1.00. Outlet completed the requisite advertising by August, 1990, and on December 7, 1990, Norwood filed under Chapter 11.

Pursuant to the terms and conditions of the contracts, as of March 28, 1991, Outlet was entitled to purchase the van for $1.00. In fact, Outlet did tender this amount to the Debtor and requested the title certificate, but Norwood refused to accept the dollar or to relinquish the title certificate to

---

1. In addition, Outlet was obligated to maintain and insure the vehicle during the lease period, which it did.

the vehicle. In September 1991, Norwood attempted to reject both contracts, but its motion was denied on the ground that the agreements were no longer executory.

The issue as we see it, is whether the Debtor's failure to reject the contract prior to substantial performance by both parties renders the agreement enforceable by Outlet against the Debtor, post-petition. We believe that it does.

It is undisputed that Outlet performed its end of the bargain prior to the Debtor's bankruptcy filing,[2] or at the latest before any attempt at rejection. In addition, having furnished Outlet with the vehicle prior to the petition, the Debtor performed substantially all of its obligations under the agreement, except for the purely ministerial act of delivery of the title document. Based on the undisputed facts and the applicable law as we understand it, we rule that prior to any relevant deadline,[3] there had been full or substantial performance by both parties, that the Debtor's continued possession of the title certificate thereafter has been merely custodial, and that the transfer now of the certificate to Outlet is just that—the turnover of property, to its owner, by one in mere physical possession. *In the Matter of Cox,* 28 B.R. 588 (Bankr.D.Idaho 1983).

Accordingly, the Debtor is ORDERED to deliver to Outlet the title certificate to the subject van, VIN 1GNDM15Z9LB153950, within seven days of this Order.

Enter Judgment consistent with this opinion.

---

**2.** Apparently Outlet performed some post-petition maintenance on the vehicle which was required under the contracts. However, we consider Outlet's actual consideration for the van to be the substantial advertising it aired, and those services were completed three to four months before the bankruptcy filing.

**3.** In the present circumstances, we do not deem the bankruptcy filing to be a material or controlling date. We consider the operative dates to be either: (1) the expiration of the contract by its terms; or (2) the effective rejection of the contract prior to its expiration, which of course did not occur here.